UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Cameron Chapman,              :
          Plaintiff,          :
                              :
     v.                       :    File No. 2:07-CV-61
                              :
Merchandise Mart              :
Properties, Sustainable       :
Furniture Council,            :
          Defendants.         :

OPINION AND ORDER
(Paper 1)

Plaintiff Cameron Chapman, d/b/a Mount Badon Trading and proceeding *pro se*, seeks to file a complaint alleging trademark infringement by the defendants.  Chapman has also submitted an application for leave to proceed *in forma pauperis*, and her complaint seeks an *ex parte* temporary restraining order.  For the reasons set forth below, the application to proceed *in forma pauperis* and the request for an *ex parte* temporary restraining order are DENIED.

Factual Background

Chapman's complaint claims federal and common law trademark infringement with respect to the term "GreenStyle."  For relief, Chapman seeks to stop the defendants from using the word "GreenStyle" in an exhibit at a furniture show in North Carolina.  The show is

scheduled for March 26 through April 1, 2007.

Chapman claims that she is the sole owner of the "GreenStyle" trademark, and that she has been using the term "GreenStyle" continuously since July 18, 2006 in association with a weblog.  She has also used the term "GreenStyle" in connection with a "digital magazine" entitled "GreenStyle Magazine."  Exhibits to the complaint show Chapman's blog, entitled "GreenStyle™ - The portal for conscious consumers," with content ranging from eco-architecture to wind turbines to environmental clubs.  Chapman claims that her content also includes sustainable furniture and design.

On March 1, 2007, defendants Merchandise Mart Properties, Inc. ("MMP") and Sustainable Furniture Council ("SFC") announced "the launch of the 'GreenStyle Pavilion,' an area dedicated to promoting sustainable furniture, lifestyle and design" as part of a furniture show in High Point, North Carolina.  (Complaint at 2).[1] On March 6, 2007, Chapman sent a letter to MMP, with a copy to the head of SFC, demanding that the defendants

---

[1]  Some media coverage of the exhibit spells the term "GreenStyle," while other coverage refers to it as "GREENStyle."  (Complaint Ex. 7 and 9).

cease and desist their use of the term "GreenStyle." Chapman threatened that if she received no response by March 20, 2007, she would seek injunctive relief prior to the opening of the furniture show on March 26, 2007.  In a letter dated March 9, 2007, MMP's senior staff counsel informed Chapman that MMP disagreed with her assessment of infringement.

> First, we could not locate any federal registration of "Greenstyle" by you in light of your statement that you "trademarked" the term. Further, if you are instead claiming common law rights, your rights are limited to the specific goods and services you are selling and the geographic location of such services.  Although your website does not appear complete, from what we could find on your company's business, it was clear that it is not the furniture exposition business.
>
> Further, "Greenstyle" is highly descriptive and generic of the idea of environmentally friendly products.  We are using the term to describe sustainable furniture and not as a trademark. Anyone going on the internet can find hundreds of "green" and "greenstyle" references describing like products.

(Complaint Ex. 13).[2]

---

[2]  Chapman concedes that she has not registered the mark "GreenStyle."  The Lanham Act provides protection for both registered and unregistered marks.  Time, Inc. v. Petersen Publishing Co., L.L.C., 173 F.3d 113 (2nd Cir. 1999); Hasbro, Inc. v. Lanard Toys, Ltd., 858 F.2d 70 (2nd Cir. 1988); 15 U.S.C. § 1125(a)(1).

Chapman's complaint is dated March 18, 2007, and her initial filings are date-stamped as having been received by the Court on March 21, 2007.  She has filed a notice of *pro se* appearance and a motion for leave to proceed *in forma pauperis*.  Her complaint and supporting memorandum claim that use of the term "GreenStyle" at the show will cause irreparable harm and confusion, and ask that the Court issue an *ex parte* temporary restraining order enjoining use of the term by the defendants.  Chapman is not seeking to enjoin the furniture show exhibit itself.

<u>Discussion</u>

I.  *<u>In forma pauperis</u> Application*

A preliminary issue is whether the Court may accept Chapman's complaint without payment of the filing fee. Her application shows that she is currently employed with income of $1900/month and $1000 in the bank.  Her monthly expenses roughly equal her income.  She is the 50% owner of a home and three cars.  It is not clear how much equity she has in any of these items.[3]

_____

[3]  Although it is not clear from Chapman's affidavit, a 50% ownership interest suggests that there may be another wage earner in the household.  While the Court does not base its decision upon an assumption of a spouse or partner, it nonetheless notes that the earnings of such a partner are relevant to the consideration of an IFP application.  <u>See</u>

4

The purpose of the statute permitting litigants to proceed in forma pauperis is to insure that indigent persons have equal access to the judicial system.  A party need not be absolutely destitute in order to qualify.  "No party must be made to choose between abandoning a potentially meritorious claim or foregoing the necessities of life." Potnick v. Eastern State Hosp., 701 F.2d 243, 244 (2d Cir. 1983).  An in forma pauperis application is sufficient if it states that the applicant cannot "pay or give security for the costs .  .  . and still be able to provide himself and dependents with the necessities of life." Adkins v. E.I. DuPont de Nemours & Co., Inc., 335 U.S. 331, 339 (1948).

Here, the plaintiff appears to have regular employment and savings well in excess of the filing fee. Therefore, based upon the information currently before the Court, the Court cannot conclude that the Chapman will be denied "the necessities of life" of she is

_____

Fridman v. The City of New York, 195 F. Supp. 2d 534, 537 (S.D.N.Y. 2002) (courts consider "the resources that the applicant has or 'can get' from those who ordinarily provide the applicant with the 'necessities of life,' such as 'from a spouse, parent, adult sibling or other next friend.'") (quoting Williams v. Spencer, 455 F. Supp. 205, 208-09 (D. Md. 1978)).

compelled to pay the filing fee.  The fee shall be paid
within 20 days of the date of this Order.

II.  Procedural Requirements for *Ex Parte* Relief

      Despite the fact that the Clerk of Court will not be
docketing Chapman's complaint until the filing fee is
paid, the timing of the complaint and the impending North
Carolina exhibit compels a decision on the issue of the
temporary restraining order.  A temporary restraining
order may be granted *ex parte*

> without written or oral notice to the adverse
> party or that party's attorney only if (1) it
> clearly appears from specific facts shown by
> affidavit or by the verified complaint that
> immediate and irreparable injury, loss, or
> damage will result to the applicant before the
> adverse party or that party's attorney can be
> heard in opposition, and (2) the applicant's
> attorney certifies to the court in writing the
> efforts, if any, which have been made to give
> the notice and the reasons supporting the claim
> that notice should not be required.

Fed. R. Civ. P. 65(b).  Irreparable harm in a trademark
case, as discussed below, is a complex and fact-specific
issue.  Even assuming that Chapman can show such harm,
she has failed to satisfy the notice-related requirements
in subsection (2) of Rule 65(b).

      Chapman sent a cease and desist letter giving
defendants two weeks to respond, and stated her intent to

6

seek injunctive relief prior to March 26th.  She has made
no showing, however, of any effort to give the defendants
notice of the current complaint or her motion for an *ex
parte* restraining order.  Nor does she explain why notice
should not be required, aside from her argument that
"[t]his motion should be granted Ex Parte because of the
brief time period available to the Plaintiff (effectively
until Friday, March 23, due to the start date of the High
Point Market being on Monday, March 26) . . . ."
(Complaint at 4).

In most cases, a court is justified in proceeding *ex
parte* "where notice to the adverse party is impossible,
as in the cases where the adverse party is unknown or is
unable to be found."  First Technology Safety Systems,
Inc. v. Depinet, 11 F.3d 641, 650 (6th Cir. 1993).  A
district court may also proceed *ex parte* where notice to
the defendant would render further action fruitless.  In
re Vuitton et Fils S.A., 606 F.2d 1, 4-5 (2d Cir. 1979).
Neither of these conditions has been satisfied in this
case.

Chapman has already had contact with the defendants,
thus displaying that the opposing parties are both known

and able to be found.  With respect to the second condition, it does not appear that notice to the defendants would cause any further harm.  For example, this not the type of case where goods will be destroyed or disposed of if notice is provided.  See First Technology, 11 F.3d at 650.  Indeed, Chapman has already notified the defendants of her general intent to seek injunctive relief.  It is, therefore, unclear what harm would have been suffered by providing them notice of the fact that she has now filed for a temporary restraining order in federal court.

Furthermore, where a plaintiff has had advance notice of a potential infringement but has waited until the last minute to file for injunctive relief, a "knowing application at the eleventh hour is an independent ground" for denying a temporary restraining order.  Baron Atlantic Ltd. v. Marrow, 898 F. Supp. 242, 244 (S.D.N.Y. 1995) (citation omitted).  Chapman knew about this alleged infringement on March 1st.  Upon receipt of the March 9th letter from MMP's counsel, she knew that the defendants were not going to comply with her request to cease and desist.  If Chapman nonetheless waited to file

8

suit until the May 20ᵗʰ deadline set forth in her letter, this was a deadline that she herself imposed.  Therefore, to the extent that this matter is now pressing on Chapman and the Court, its urgent nature was brought about, in part, by Chapman's own timetable.

For each of these reasons, the motion for *ex parte* temporary restraining order is DENIED.

III.  <u>Substantive Requirements for Injunctive Relief</u>

Moreover, based upon the limited factual record before it, the Court finds that Chapman has not met her substantive burden for preliminary relief.  A party seeking a preliminary injunction must show (1) immediate irreparable injury and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardship tipping decidedly towards the movant.  <u>See</u> <u>Fed. Express Corp. v. Fed. Expresso, Inc.</u>, 201 F.3d 168, 173 (2d Cir. 2000). "In an action for trademark infringement, where a mark merits protection, a showing that a significant number of consumers are likely to be confused about the source of the goods identified by the allegedly infringing mark is

9

generally sufficient to demonstrate both irreparable
injury and a likelihood of success on the merits."
Virgin Enters. Ltd. v. Nawab, 335 F.3d 141, 146 (2d Cir.
2003).  Accordingly, the Court first asks whether
Plaintiff's mark is entitled to protection, and then
whether defendants' use of the mark is likely to cause
confusion to consumers as to the origin or sponsorship of
the defendants' goods.  See Gruner + Jahr USA Publ'g v.
Meredith Corp., 991 F.2d 1072, 1074-76 (2d Cir. 1993).

     A.  Does "GreenStyle" Merit Protection?

     In response to the cease and desist letter, counsel
for MMP argues that "GreenStyle" is a generic term
representing the "idea of environmentally friendly
products."  Where, as here, the plaintiff's mark is
unregistered, the plaintiff bears the burden of proving
that her mark is valid, which includes the burden of
rebutting a defense that the unregistered mark is
"generic" and unprotectable.  See Reese Publ'g Co., Inc.
v. Hampton Intern. Communications, Inc., 620 F.2d 7, 11
(2d Cir. 1980).

          A generic term consists of words that simply
          identify a class or genus of goods to which a
          particular product belongs.  See TCPIP Holding
          Co., Inc. v. Haar Communications, Inc., 244 F.3d

                              10

88, 93 (2d Cir. 2001).  Examples of generic
terms include "Ale House" for an establishment
that sells food and beer, <u>see</u> <u>Ale House Mgt.,
Inc. v. Raleigh Ale House, Inc.</u>, 205 F.3d 137,
140-41 (4th Cir. 2000), "Cellular Sales" for the
sale of cellular telephones, <u>see</u> <u>Cellular Sales,
Inc. v. Mackay</u>, 942 F.2d 483, 486 (8th Cir.
1991), "Light Beer" for beer that is light in
body and taste, <u>see</u> <u>Miller Brewing Co. v. G.
Heileman Brewing Co.</u>, 561 F.2d 75, 80 (7th Cir.
1977), [and] "Screenwipe" for a cloth used for
cleaning computer and television screens, <u>see</u> <u>In
re Gould Paper Corp.</u>, 834 F.2d 1017, 1018-19
(Fed. Cir. 1987) . . . .

<u>Jewish Sephardic Yellow Pages, Ltd. v. DAG Media, Inc.</u>,

2007 WL 817404, at *9 (E.D.N.Y. March 19, 2007).

Chapman argues that her mark is "suggestive."  A

suggestive mark is one that does not describe, but merely

suggests, the features of a product, requiring the

purchaser to use "imagination, thought and perception to

reach a conclusion as to the nature of goods."  <u>Time,

Inc. v. Petersen Pub. Co. L.L.C.</u>, 173 F.3d 113, 118 (2d

Cir. 1999) (internal quotation marks and citation

omitted).

Examples of suggestive marks include "At A
Glance" for calendars, <u>see</u> <u>Cullman Ventures,
Inc. v. Columbian Art Works, Inc.</u>, 717 F.Supp.
96, 119-20 (S.D.N.Y. 1989), "Citibank" for an
urban bank, <u>see</u> <u>Citigroup Inc. v. City Holding
Co.</u>, 171 F. Supp. 2d 333 (S.D.N.Y. 2001),
"Habitat" for home furnishings, <u>see</u> <u>Habitat
Design Holdings, Ltd. v. Habitat, Inc.</u>, 436
F.Supp. 327, 331 (S.D.N.Y. 1977), and "L'eggs"

> for women's hosiery, <u>see</u> <u>Sara Lee Corp. v.
> Kayser-Roth Corp.</u>, 81 F.3d 455, 465 (4th Cir.
> 1996).  A suggestive mark is considered
> inherently distinctive, and is protected without
> a showing of secondary meaning.

<u>Jewish Sephardic Yellow Pages</u>, 2007 WL 817404, at *10.

Courts have recognized that determining a mark's classification involves questions of fact, and that "the lines of demarcation are not always bright." <u>Abercrombie & Fitch</u>, 537 F.2d at 9.  Here, it is certainly arguable that the term "green" has become generic for environmentally friendly, and "style" is hardly suggestive of any product feature.  It is also conceivable that the term "greenstyle" as the title of a weblog or magazine might require the use of "imagination, though and perception" to reach a conclusion as to the nature of the site.  Accordingly, there are serious questions about the merits of the mark.

B.  Confusion

Assuming that her mark is entitled to protection, Chapman has not offered sufficient support for her claim of irreparable harm based upon consumer confusion.  The factors for determining consumer confusion are: (1) strength of the plaintiff's mark; (2) similarity of the

parties' marks; (3) the proximity of the parties' products in the marketplace; (4) the likelihood that the plaintiff will bridge the gap between the products; (5) actual confusion; (6) defendants' intent in adopting the mark; (7) the quality of the defendants' product; and (8) the sophistication of the relevant consumer group. Nabisco, Inc. v. Warner-Lambert Co., 220 F.3d 43, 46 (2d Cir. 2000) (citing Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492, 495 (2d Cir. 1961)).

The strength of Chapman's mark (*e.g.* generic, suggestive etc.) is discussed, in part, above.  Chapman contends that she owns rights in the mark because of her nationwide reach on the internet.  Her complaint alleges that she received more than 5,000 unique visitors to her Greenstyle blog in February, 2007 alone.

The parties' usages of the term GreenStyle are quite similar, as some press account cite the defendants as capitalizing both the "G" and the "S."  Their product markets, however, do not appear to be proximate.  Chapman hosts a weblog that discusses a wide range of environment-related issues.  MMP produces furniture shows, while SFC is, by definition, limited to furniture.

Chapman's presence is on the internet, while the defendants' primary presence in advertizing and at a physical location in North Carolina.  There is no suggestion in the record that the defendants are likely to "bridge the gap" by moving their use of the term GreenStyle onto the internet.

Furthermore, Chapman has not made any showing of either actual confusion or likely confusion.  See Omicron Capital LLC v. Omicron Capital LLC, 433 F. Supp. 2d 382, 392 (S.D.N.Y. 2006) ("Actual confusion . . . can be shown through evidence of particular . . . incidents of confusion, as well as through market research studies.").  Instead, she speculates that use of the term GreenStyle by all parties "could easily be confusing to even sophisticated customers."  The Court declines to make a finding of confusion based upon such speculation.

Nor is there is any evidence that the defendants acted in bad faith.  This factor "looks to whether the defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between his and the senior user's product." Nora Beverages, Inc. v. Perrier Group of America, Inc.,

269 F.3d 114, 124 (2d Cir. 2001).  Despite Chapman's claim that her site is easily found on the internet, there is no indication that the defendants were aware of her internet presence when they named their GreenStyle Pavilion.  Furthermore, counsel for MMI stated that they will "consider alternate names for our next show," thus arguably demonstrating a good faith intent to avoid any further potential infringements.

With respect to the quality of the defendants' products, Chapman does not contend that those products are of such poor quality that they would harm her reputation.  See Omicron Capital LLC, 433 F. Supp. 2d at 393.  Finally, Chapman does not contest the possibility that consumers of environmentally friendly products are likely to be sophisticated, and thus less likely to be confused by similarities in a trade name.  See Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc., 973 F.2d 1033, 1045 (2d Cir. 1992).

Viewing these factors together, the Court finds that Chapman has not established a likelihood of consumer confusion entitling her to a temporary restraining order.

C.  Other Irreparable Harm

15

While irreparable injury under the Lanham Act is presumed if a plaintiff is able to show a likelihood of confusion, irreparable harm must be proved independently absent a showing of likely confusion.  See Fed Express Corp., 201 F.3d at 174.  The movant must show that injury is "neither remote or speculative, but actual and imminent."  Rodriquez by Rodriquez v. DeBuono, 175 F.3d 227, 233-34 (2d Cir. 1999).  Because monetary loss may be estimated and compensated, such harm is not considered irreparable harm,  Brenntag Int'l Chems., Inc. v. Bank of India, 175 F.3d 245, 249 (2d Cir. 1999), unless the movant can show the monetary loss cannot be compensated, for example, because it will probably result in bankruptcy, Borey v. Nat. Union Fire Ins. Co., 934 F.2d 30, 34 (2d Cir. 1991).

Chapman states that her claim of irreparable injury "is primarily based on consumer confusion."  Her complaint also alleges that the defendants' use of her trademark will inhibit present or future profits.  This claim arises out of Chapman's belief that use of the GreenStyle mark at the furniture show, as well as related advertising, will adversely affect her search engine

16

ranking.  Assuming that this negative impact on search engine ranking results in monetary losses, Chapman has not claimed that these losses cannot be compensated.  She has therefore failed to show that such harm will be irreparable.

<u>Conclusion</u>

For the reasons set forth above, Chapman's application to proceed *in forma pauperis* (Paper 1) is DENIED.  Chapman shall pay the filing fee for this action within 20 days.  If Chapman fails to submit timely payment, the Clerk of Court shall close the case file. Additionally, Chapman's request for an *ex parte* temporary restraining order is DENIED.

Dated at Burlington, in the District of Vermont, this 23rd day of March, 2007.


<u>/s/ William K. Sessions III</u>
William K. Sessions III
Chief Judge, United States District Court